SULLIVAN, Appellant, vs. COMPRESSED AIR RENOVATOR AND SWEEPER MANUFACTURING COMPANY, Respondent.

*February 21—March 19, 1907.*

*Patents: Annulment of license.*

In an action to revoke and annul a license by which plaintiff gave to the defendant corporation the exclusive right to make and sell a patented device, the facts (showing, among other things, that, although defendant had not been successful in making and selling the machines covered by the invention, yet it had acted with reasonable diligence and had complied in all respects with the terms of the license agreement) are *held* not to entitle plaintiff to any relief.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

This is an action to revoke, set aside, and annul a certain license issued to the defendant by the plaintiff and one John H. Stouthamer October 19, 1905, for making, using, and selling pneumatic renovators.

It appears from the record, and is undisputed or found by the court, in effect: (1) That prior to November 25, 1904, said device had been invented by the plaintiff and one George J. Harris, and on that day they filed an application for a patent therefor, which application is still pending. Subsequently, and prior to the issue of said license, said Harris had sold all his right, title, and interest in said invention to said

Stouthamer, who held a recorded assignment thereof from Harris. October 19, 1905, the defendant company became incorporated under the laws of this state with a capital stock of $50,000, divided into 500 shares of $100 each, subscribed for as follows: the plaintiff $23,500, Stouthamer $23,500, Dietz $1,000, Schultz $1,000, De Swarte $1,000, which parties were all made directors, and Dietz was elected president, De Swarte vice-president, the plaintiff secretary, and Stouthamer treasurer. (2) The defendant accepted all of said stock subscriptions and called them all in and made them payable. Said license gave to the defendant the exclusive right to make and use said device until the issuance of the patent, and then during the life of the patent. (3) The consideration for granting said license was $10,000 of fully-paid stock issued to the plaintiff and a like amount issued to Stouthamer, and a royalty of five per cent. of the selling price of each machine. (4) The plaintiff and Stouthamer each turned back or attempted to turn back into the treasury of the defendant the balance of the stock so subscribed by him—that is to say, $13,500 each,—making an aggregate amount of $27,000, for which no consideration has ever been paid by either of them, but the defendant has taken no action thereon. (5) Of the stock so turned back the defendant has, by and with the consent of the plaintiff and Stouthamer, re-issued twelve shares to Dietz, who has paid therefor to the defendant $600 and no more, and ten shares to Keppel, who has paid therefor $550 and no more, and five shares par value to George Harris for services at par. (6) Since the incorporation of the defendant, Dietz has paid to the defendant to apply on his stock subscriptions $1,490, Stouthamer has paid to the defendant about $100, and Schultz has paid in $50. (7) The plaintiff has contributed no further sum than mentioned to the corporation. (8) Immediately after the organization of the defendant it commenced the manufacture of renovators embodying said invention. (9) From the organization of the defendant to

within a few days prior to the commencement of the action the business has been conducted under the joint management of the plaintiff and Stouthamer, and the same was conducted harmoniously at all of said times.   (10) All the business of said corporation was done with the consent and approval of the plaintiff, and without objection or dissent by him until the commencement of this action.   (11) By general understanding of all persons interested, but without corporate action, the defendant was to issue 100 shares of its stock so subscribed by the plaintiff and Stouthamer, besides the 100 shares which were issued to the plaintiff and Stouthamer as mentioned, but only fifty-seven shares thereof were taken as aforesaid.   (12) The defendant through its said management found it best at the outset to change the construction and manner of operating said device, and much time and money have been consumed in making such changes, to all of which the plaintiff consented and advised and co-operated therein. (13) In consideration of the amount of the capital stock employed, the best results obtainable had been attained at the time this action was commenced.   (14) The defendant has rendered the statements required by said license to be made to the licensors and has paid all royalties due on said license. (15) The defendant has acted with reasonable diligence under all circumstances attending the business, and has complied with the terms of said license agreement in all respects. (16) The charge of the complaint that the other members of the defendant or any of them have conspired against the plaintiff for any purpose whatever is not proven.   (17) The charge in the complaint that some of the stockholders have agreed among themselves to limit the output of the corporation is not proven, and none of said stockholders have endeavored to compel the plaintiff to part with his interest in the corporation, and it is not true that the business of the defendant is to be conducted so as to deprive the plaintiff of any revenue from the sale and manufacture of said renovators.

(18) No resolution or motion was ever offered or made by the plaintiff in any corporate meeting to provide for the issue of any more of said stock, and no action has ever been taken to issue any more of said stock. (19) All parties have assumed that such unissued stock could be issued for an amount less than par. All stockholders have made numerous efforts to sell or dispose of some of said unissued stock at prices ranging from 50 to 100 per cent. par value, but none of said efforts have been successful, except as hereinbefore stated. The plaintiff has had the consent and co-operation of all the members and officers of the defendant to dispose of the balance of said 100 shares which was agreed among the members to be issued, but no unconditional offer has been received for the same or any part thereof, and no offer therefor, or for any part thereof, at par has been obtained. The canceling or annulling of said license would render the investments of stockholders other than the plaintiff valueless, and would destroy the business of the defendant.

As conclusions of law the court found, in effect, (1) that the license agreement has not been violated by the defendant; (2) that the plaintiff is not entitled to any of the relief demanded or prayed for in the complaint; (3) that the prayer of the complaint be denied on the merits, and the complaint dismissed, with costs and disbursements to be taxed in favor of the defendant and against the plaintiff; and judgment was ordered accordingly.

From the judgment so entered the plaintiff appeals.

For the appellant there was a brief by *Charles H. Hamilton* and *Fred A. Teall,* and oral argument by *Mr. Teall.* They contended, *inter alia,* that where, as here, the plaintiff has given an irrevocable license to the defendant for which he has received practically no consideration and whereby he is deprived of the right to manufacture his invention, and the defendant refuses or fails to manufacture it, and where that contract was doubtless induced by the confidential relations

existing between the plaintiff and Mr. Stouthamer, who is now the principal stockholder and virtually in control and management of the company, such a contract is virtually in restraint of trade and is unconscionable and without consideration.

*Lyman G. Wheeler,* for the respondent.

Cassoday, C. J.    The findings of the court as set forth in the foregoing statement are amply sustained by the evidence. The facts so established make it very clear that the plaintiff is not entitled to any relief in this action.    It is quite obvious that the failure to successfully manufacture and sell the machines covered by the invention was owing to a want of cash capital.    In fact, the plaintiff testified to the effect that to make a success out of the business required $10,000 or $15,000 of cash capital.    Of course, this could not be supplied by issuing paid-up or partially paid-up capital stock to the owners of the invention as consideration therefor.    The method of raising the requisite cash capital is, of course, a matter of business policy and administration.

*By the Court.*—The judgment of the circuit court is affirmed.